| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

Securities and Exchange Commission, §
§
　　　　Plaintiff, §
§
versus § Civil Action H-12-1051
§
Anthony J. Nocella and J. Russell McCann, §
§
　　　　Defendants. §

## Opinion on Partial Summary Judgment

1.　*Introduction.*

　　The Securities and Exchange Commission sued a bank for violating its regulations. Here, it seeks to bar two of the bank's executives from working as officers or directors of a publicly traded company. The two officers moved for partial judgment. They will prevail because they are fit to serve as officers or directors.

2.　*Background.*

　　Franklin Bank Corporation financed real estate and originated single-family, residential mortgages. Anthony J. Nocella was its chief-executive officer, and J. Russell McCann was its chief-financial officer.

　　In 2007, home prices fell, and many mortgages were delinquent. In response to the distress, Franklin modified loans using three programs: (a) Fresh Start; (b) Strathmore; and (c) Great News.

　　Under Fresh Start, Franklin sent letters to borrowers who were four or more payments past due. If a borrower made his next payment, Franklin would consider the loan current and any residual balance was to be due at maturity of the loan. The modified loans were not listed as impaired and were removed from Franklin's disclosures.

　　This was inconsistent with Franklin's policies on non-performing assets. When a loan became four payments past due, it was to remain as non-accruing until the loan was current and the borrower demonstrated an ability to repay. Generally accepted accounting principles require

a loan to be considered impaired when it is likely that a creditor can not collect all amounts that are due.

Nocella and McCann concede that some of the modified loans were accounted for incorrectly in the third quarter, but they say that they did not know about it at the time. Franklin modified millions of dollars of loans through Fresh Start. The Federal Deposit Insurance Corporation did not criticize Fresh Start.

Franklin also had four loans with Strathmore, a residential construction company. Strathmore asked for a modification when it realized it could not repay the loans. Without performing new appraisals, Franklin's credit committee modified the loans with an interest reserve for the next 12 months. Franklin would, in effect, capitalize the year's interest.

After the modifications, McCann classified the loans as performing. The misclassification caused Franklin to understate its non-performing loans and overstate its reported earnings for the third quarter. When the FDIC disagreed with that classification, Franklin reclassified them as "non-performing troubled debt restructurings."

Through Great News, Franklin incorrectly accounted for non-performing loans. Its executive vice president, Dan Cooper, sent the "Great News letters" in the fourth quarter to 28 single-family borrowers without receiving a payment. Although severely past due, the letters said that the loans would be considered current for the third-quarter if the borrower made his next payment. This modification also deferred overdue interest payments to the maturity of the loan.

The commission says that Nocella approved the letters and directed Cooper to reduce the third-quarter, non-performing loans without an immediate payment. Nocella and McCann say that they did not discuss the modifications with Cooper or authorize the backdating.

3.    *Officer-and-Director Bar.*

A court may bar a person from serving as an officer or director of a public company if he (a) violates Section 10(b) of the Securities Exchange Act of 1934 and (b) "demonstrates unfitness to serve as an officer or director."[1] The court is afforded discretion and may consider the defendants' (a) egregiousness of the violation; (b) recidivism; (c) roles in the company

---

[1] 15 U.S.C. § 78u(d)(2)

during the fraud; (d) degree of scienter; (e) economic stake; and (f) likelihood of future violations.[2]

4.   *Nocella and McCann.*

First, the violations were not egregious. Franklin devised a plan to allow borrowers to remain in their homes with modified loans that were accounted for incorrectly. Whatever Nocella and McCann's role, their actions were not flagrant. They did not profit widely or enrich others with this program.

Second, Nocella and McCann are both first-time offenders. The commission concedes that they have not been ever charged with a securities-law violation.

Third, they each held prominent positions in the bank. Other Franklin officials, however, reviewed the letters and the proposed modifications; Nocella and McCann did not create or implement the programs on their own. They were also disclosed to the FDIC. As CEO and CFO, they are abstractly accountable for the actions of the company and cannot claim they were oblivious. This does not mean, however, that they were individually responsible for incorrect accounting.

Fourth, the defendants acted with no intent to defraud Franklin's shareholders and with no extreme departure from business judgment. When the FDIC disagreed with the Strathmore loan classifications, Nocella and McCann corrected Franklin's books to reflect its criticisms.

Fifth, their financial gain was minimal. As Franklin employees and shareholders, they wanted the bank to succeed. They did not, however, sell stock or exercise options during this time. However misguided, the modifications were not a get-rich scheme for management. They appear to be a good-faith attempt to manage a floundering bank during a recession.

Sixth, neither is in a position to violate securities laws in the future. Nocella retired, and McCann works for a private bank that does not file public-securities reports. It is unlikely that the misconduct will recur.

5.   *Conclusion.*

Anthony J. Nocella and J. Russell McCann will not be barred from serving as officers or directors of a publicly traded company. This court recognizes that it is wrong that Franklin

---

[2] SEC v. Patel, 61 F.3d 137, 141 (2nd Cir. 1995).

Bank Corporation improperly accounted for modified mortgages under their management. It is abusive to seek a permanent bar against two executives who were working for a troubled company in a troubled time without adequate evidence that they were responsible for the improper accounting.

Signed on August 11, 2014, at Houston, Texas.

Lynn N. Hughes
United States District Judge